IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

|  |  | FILE NO. |
|---|---|---|
| GREGORY BADER, | ) | |
| Plaintiff, | ) | |
| vs. | ) | COMPLAINT |
|  | ) | And |
| MARK KURDYS and | ) | JURY DEMAND |
| ROBERTS & STEVENS P.A., | ) | |
| Defendants. | ) | |

PLAINTIFF Gregory Bader, by and through his counsel, for his verified Complaint against the Defendants Mark Kurdys and Roberts & Stevens P.A., states and alleges as follows:

## PARTIES

1. Plaintiff is a citizen and resident of the State of Florida.

2. Defendant Mark Kurdys is a citizen and resident of the State of North Carolina who is licensed and practicing as an attorney in the State of North Carolina.

3. Defendant Roberts & Stevens P.A. is a law firm doing business in the State of North Carolina, with its principal office in Buncombe County, North Carolina.

4. At all times pertinent, Defendant Kurdys was acting within the course and scope of his employment with Defendant Roberts & Stevens P.A., which is vicariously liable for the acts and omissions of Defendant Kurdys.

5. Hereinafter, Plaintiff refers to the Defendants collectively as "Defendants".

## JURISDICTION AND VENUE

6. Jurisdiction in this matter is proper in the United States District Court pursuant to 28 U.S.C. Section 1332 on the grounds that there is a complete diversity of citizenship between the Plaintiff and the Defendants and the amount sought by the Plaintiff for compensatory damages is in excess of $75,000.00. As to claims arising under state law, this Court has jurisdiction pursuant to 28 U.S.C. Section 1367.

7. Venue is proper in the Western District of North Carolina in accordance with 28 U.S.C. Section 1391 on the grounds that a substantial number of actions and matters alleged occurred within the Western District of North Carolina.

## NATURE OF THE ACTION

8. Plaintiff seeks recovery of compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) incurred as the proximate result of negligence by Defendants in their professional capacities as attorneys and recovery of punitive damages from Defendants in recognition of Defendants' willful and wanton conduct, including intentional and fraudulent concealment.

## FACTUAL ALLEGATIONS

9. On or about June 2, 2009, Plaintiff initially contacted Defendants regarding representation against Sossomon, his former attorney, for negligent representation.

10. On that date, Plaintiff provided Defendants with his complete file from his Sossomon representation for review.

11. On or about June 8, 2009, Kurdys provided Plaintiff with a detailed assessment of his case,

stating "if it appears that Mr. Sossomon has no insurance and no meaningful assets, I will make an appropriate recommendation to you about the merits of further pursuit of the matter."

12. On or about June 10, 2009, based on Kurdys' case assessment and advice, Plaintiff retained the Defendants to pursue claims against Sossomon.

13. On or before July 6, 2009, Kurdys informed Plaintiff that Sossomon's professional liability insurance coverage had expired in April 2008.

14. Prior to filing suit, Kurdys and Plaintiff discussed the need to identify assets of Sossomon, possibly to enable a settlement.

15. On September 2, 2009, Kurdys and Plaintiff filed suit against Sossomon in the United States District Court, Western District of North Carolina, Asheville Division, specifically Case 2:09-cv-00049-MR-DLH.

16. On or about October 1, 2009, Plaintiff emailed Kurdys, stating Plaintiff had identified properties owned by Sossomon, but that he could not determine if the properties were mortgaged.

17. On or about October 1, 2009, Kurdys responded by email, "I was thinking this morning about recommending that somebody start searching for Sossomon assets and properties so you're on the right track. We can search online for deeds of trust regarding these properties which would identify mortgages and other liens."

18. On or about October 2, 2009, Plaintiff emailed Kurdys a list of four (4) North Carolina properties and one (1) Georgia property owned by Sossomon.

19. On or about October 21, 2009, Kurdys informed Plaintiff that Sossomon owned multiple properties in Macon County, North Carolina (hereinafter Macon County properties) with an assessed tax value in excess of $1.25M.

20. From October 2009 through December 2014, Kurdys' billing of Plaintiff indicated research regarding assets, tax assessment records, county records, deeds of trust, adverse actions, judgments, liens, etc. of Sossomon and his properties.

21. On October 28, 2014, despite Kurdys' billing of Plaintiff in this regard, Kurdys stated to Plaintiff by email that "I have never been asked to do a formal asset search beyond sending the discovery requests for asset disclosure and notice of opportunity to claim exemptions to Sossomon."

22. From October 2009 through December 2014, Plaintiff consistently stressed the importance of knowing and monitoring the debt status of Sossomon's properties, as said property was the source of collectability.

23. Beginning March 10, 2010, Kurdys referred to certain of Sossomon's properties as being owned 'free and clear', indicating that Kurdys possessed specific and accurate information regarding debts and/or encumbrances thereto.

24. On or about March 10, 2010, Kurdys first informed Plaintiff that Sossomon had transferred ownership of two (2) Macon County properties, his personal residence and a commercial property, to himself and his wife jointly in April 2009 for $10.

25. On or about March 10, 2010, Kurdys advised Plaintiff by email that these properties were owned by Sossomon "…100% with no outstanding mortgages" at the times of the transfers.

26. Said residential property was transferred on April 24, 2009, was notarized on August 25, 2009, and recorded in Macon County on September 2, 2009.

27. On or about March 10, 2010, Kurdys advised Plaintiff by email that said residential property had an assessed value of approximately $500,000.00.

28. Said commercial property was transferred on April 29, 2009, was notarized on April 29, 2009, and recorded in Macon County on December 3, 2009.

29. On or about March 10, 2010, Kurdys advised Plaintiff by email that said commercial property had an assessed value of approximately $1.825M.

30. On this same date, Kurdys further advised Plaintiff that Kurdys deemed the April 2009 transfers of property to be fraudulent because they were designed to shield the assets from Sossomon's creditors in the face of known or anticipated claims.

31. On this same date, Kurdys, having now introduced Plaintiff to the concept of fraudulent conveyances, stated by email, "so we would, if the time came, take the position that those are fraudulent conveyances and try to undo those for purposes of executing on a judgment."

32. On June 21, 2010, Plaintiff and Sossomon reached a mediated settlement agreement, entitling Plaintiff to a judgment against Sossomon for $185,000, with an initial $15,000 payment due July 1, 2010.

33. Under the settlement agreement, Plaintiff was to receive security in the form of a confession of judgment and a promissory note and deed of trust signed by Sossomon and his wife to certain Macon County property.

34. Upon receipt of the $15,000 payment from Sossomon, both Plaintiff and Defendants received half, specifically $7,500 each.

35. On September 8, 2010, judgment in favor of Plaintiff was entered against Sossomon for $170,000, plus costs and interest from the date of judgment (hereinafter the Bader judgment), after Sossomon failed to honor the settlement agreement.

36. Kurdys failed to record the Bader judgment against Sossomon in Macon County, where Sossomon's properties had previously been identified.

37. Kurdys' duty was to be record timely the Bader judgment with the County Clerk in Macon County, North Carolina.

38. Once properly recorded, the Bader judgment would have become a lien on real property of the judgment-debtor Sossomon.

39. As a result of Kurdys' failure to record the Bader judgment timely, no lien was noticed in Macon County, North Carolina indexes by subsequent purchasers and/or lienholders of Sossomon's properties.

40. As a result of Kurdys' failure to record the Bader judgment timely, Plaintiff lost his position as a judgment-creditor of Sossomon.

41. Plaintiff's loss of position as a judgment-creditor caused substantial and irreparable harm to his case.

42. On January 7, 2011, Sossomon conveyed the aforementioned Macon County residential property in trust to Bank of America, N.A. Said deed of trust was recorded in Macon County, North Carolina on January 25, 2011.

43. On February 25, 2011, a Writ of Execution in favor of Plaintiff was entered against Sossomon for $178,482.33.

44. On October 4, 2011, the United States Court of Appeals for the Fourth Circuit affirmed the District Court's orders in the Bader lawsuit. On November 4, costs were awarded in favor of Plaintiff by the Clerk of the Federal District Court. On November 15, the United States Court of Appeals denied Sossomon's petition for a panel rehearing of its October 4, 2011 decision.

45. In May 2013, Sossomon filed for bankruptcy and claimed an exemption for the Macon County properties.

46. On May 8, 2013, Kurdys filed an Adversary Proceeding on Plaintiff's behalf, specifically Adversary Proceeding No. 13-02007, seeking the Bankruptcy Court to set aside the aforementioned property conveyances as fraudulent.

47. On May 28, 2013, Kurdys filed a Notice of Dismissal of Plaintiff's Adversary Proceeding against Sossomon.

48. On or about June 1, 2013, Kurdys stated to Plaintiff by email, "…our fraudulent conveyance claims automatically became those of the Trustee and we had to dismiss our fraudulent conveyance adversary proceeding against Sossomon and B of A. That was dismissed last week."

49. On or about June 1, 2013 was Plaintiff's first notice that his Adversary Proceeding against Sossomon should, would, and had been dismissed by his counsel.

50. Kurdys' dismissal of Plaintiff's Adversary Proceeding was not in the best interest of Plaintiff's case.

51. Kurdys failed to consult with Plaintiff about the consequences of dismissing Plaintiff's Adversary Proceeding.

52. Kurdys' dismissal of Plaintiff's Adversary Proceeding caused substantial and irreparable harm to Plaintiff's case.

53. Kurdys intentionally misled Plaintiff (see paragraph 48) to believe that the Bankruptcy Trustee's action to set aside was an adequate substitute for Plaintiff's Adversary Proceeding.

54. Kurdys intentionally misled Plaintiff that Plaintiff's Adversary Proceeding "had" to be dismissed.

55. In June 2015, through Sossomon's bankruptcy, Plaintiff's $201,097.50 claim against Sossomon was paid off in the amount of $20,278.72.

56. Plaintiff's meager ten percent (10%) payoff of his claim is a direct result of his loss of position as a judgment-creditor.

57. To date, Defendants have failed to record the Bader judgment in Macon County, North Carolina or elsewhere.

58. On August 17, 2016, Kurdys stated by email that, "…was not filed in Macon County as the litigation and subsequent appeal did not pertain to any of Sossomon's real property."

59. To date, Defendants have failed to file a state action to set aside the conveyances of property deemed fraudulent.

60. From the beginning of Kurdys' representation of Plaintiff, Plaintiff maintained extensive and repeated contact with Kurdys by email. Throughout his representation, Kurdys would routinely ignore or respond late (for days or sometimes weeks) to Plaintiff's requests for information.

61. On more than one occasion because he was unable to get a response from Kurdys, Plaintiff

contacted senior partners of Defendant Roberts & Stevens P.A., requesting information about his case.

62. From the beginning of Kurdys' representation, Plaintiff stressed the importance of knowing the status of collectability against Sossomon.

63. From the beginning of Kurdys' representation, Kurdys represented that Sossomon had sufficient assets to warrant pursuit of Plaintiff's claims.

64. In the beginning, Kurdys advised Plaintiff that sufficient assets were owned by Sossomon 'free and clear' to fully compensate Plaintiff for his claims.

65. Sometime after January 7, 2011, when Sossomon encumbered certain property to Bank of America, Kurdys advised Plaintiff that sufficient assets remained, beyond any outstanding debt to date, to fully compensate Plaintiff for his claims.

66. Sometime after January 7, 2011, when Sossomon encumbered certain property to Bank of America, Plaintiff began to question Kurdys as to how Sossomon was legally able to encumber said property with the Bader judgment in place.

67. Plaintiff's questions to Kurdys regarding Sossomon's actions (encumbering certain property) continued throughout the course of Kurdys' representation.

68. Beginning sometime after the entry of the Bader judgment and continuing through August 2015, Kurdys represented to Plaintiff, both in conversation and email, that the Bader judgment secured him a position superior to subsequent purchasers and/or lienholders.

69. Beginning sometime after the entry of the Bader judgment and continuing through August 2015, Kurdys intentionally made this representation to Plaintiff despite his knowledge to the contrary.

70. Beginning sometime after the entry of the Bader judgment and continuing through August 2015, Kurdys willfully concealed from Plaintiff the fact that the Bader judgment had not been recorded.

71. Throughout the course of Kurdys' representation, Plaintiff stressed the importance of the Bader judgment to his case.

72. Throughout the course of Kurdys' representation, Plaintiff questioned Kurdys about whether the Bader judgment was secured to enable collectability on his claims.

73. At all times relevant, Kurdys assured Plaintiff of his protected status due to the Bader judgment.

74. During the course of Kurdys' representation, Kurdys never told Plaintiff that the Bader judgment had not been recorded.

75. In June 2015, when discussing the probable ten percent (10%) award from the Sossomon bankruptcy, Kurdys first expressed to Plaintiff that Plaintiff's claim was an unsecured, non-priority claim.

76. In August 2010, Kurdys began billing Plaintiff for work product involving the action to set aside fraudulent conveyances.

77. Beginning in March 2010 and continuing through at least August 2012, Plaintiff had extensive communication with Kurdys regarding the critical need to further protect Plaintiff's interests through the filing of the action to set aside fraudulent conveyances.

78. Despite the critical need for the set aside action to further protect Plaintiff's interests and despite receiving numerous emails from Plaintiff requesting an update on the status of the set aside action, Kurdys waited until June 2011 to inform Plaintiff that the set aside action and a (newly-introduced concept of) Lis Pendens action had not yet been filed.

79. On September 1, 2011, Kurdys stated by email, "…will let you know as soon as our action to set aside the fraudulent conveyances and the lis pendens is filed."

80. Additionally, Kurdys' billing to Plaintiff indicated on September 20, October 4, October 11, and November 21, 2011, that actions were in process within the firm designed to

ultimately result in these two state actions being filed. Further, Plaintiff's case file includes a draft complaint to set aside that was never filed.

81. From September 2011 through mid-August 2012, Plaintiff requested information from Kurdys on the status of the set aside and lis pendens actions.

82. Due to Kurdys' failure to respond to Plaintiff's inquiries, Plaintiff contacted Attorney and Partner Jack Stevens and finally received a response from Kurdys on August 17, 2012.

83. On August 17, 2012, Kurdys finally responds to Plaintiff's repeated requests for information by email, stating, "There is no Lis Pendens filed because there can't be any filed. Sossomon's property is in Macon County, the same county where the action to set aside the fraudulent conveyance (of joint interest to Janet Sossomon and security interest to Bank of America) is pending…".

84. In fact, Kurdys never filed a state action to set aside the fraudulent conveyances, despite requesting and receiving from Plaintiff the filing fees necessary for instituting said action.

85. Kurdys' duty was to protect Plaintiff's interest by pursuing the set aside action at the state level.

86. Kurdys' failure to pursue a state action to set aside caused substantial and irreparable harm to Plaintiff's case.

87. Kurdys intentionally misinformed Plaintiff that an action to set aside had been filed and was pending in Macon County, when in fact Kurdys knew that no such state action was ever filed for Plaintiff by Defendants.

88. Kurdys intentionally concealed that no state action to set aside was ever instituted.

## COUNT ONE - Negligence

89. Plaintiff repeats and re-alleges the allegations of paragraphs 9 through 88 of his Complaint as if set forth herein in their entirety.

90. Kurdys, as an attorney, owed his client Bader a duty to possess and exercise that degree of skill and knowledge in the representation of his client as is commonly possessed by attorneys of similar education, training, and experience to Kurdys in western North Carolina and in similar communities; to exercise reasonable care and diligence in the application of his skill and knowledge to the legal representation of his client Bader; and to use his best judgment in the representation of his client Bader.

91. Kurdys was negligent in his representation of his client Bader, and did not possess and exercise that degree of skill and knowledge in the representation of his client as is commonly possessed by attorneys of similar education, training, and experience to Kurdys in western North Carolina and in similar communities; he did not exercise reasonable care and diligence in the application of skill and knowledge to the legal representation of his

client Bader. In particular, Defendant Kurdys was negligent in his representation of his client Bader in that he:

a. Failed to communicate with his client in a timely and meaningful manner regarding the progress and developments of his case;

b. Failed to respond to his client's numerous requests for information about the progress and developments of his case;

c. Failed to record the Bader judgment in Macon County, North Carolina property indexes by timely recording with the County Clerk;

d. Failed to inform client in a timely and meaningful manner that the Bader judgment had not been recorded;

e. Failed to pursue a state action to set aside fraudulent conveyances;

f. Failed to advise his client in a timely and meaningful manner the consequences of failing to pursue a state action to set aside fraudulent conveyances;

g. Dismissed his client's timely filed Adversary Proceeding;

h. Dismissed his client's Adversary Proceeding without his client's knowledge or

consent;

i. Failed to get his client's consent to dismiss his client's Adversary Proceeding;

j. Failed to advise his client in a timely and meaningful manner the consequences of dismissing his Adversary Proceeding.

92. As the direct and proximate result of Kurdys' negligence, Plaintiff was damaged by virtue of lost opportunity to secure his position as a judgment-creditor; by loss of opportunity to pursue actions to set aside fraudulent conveyances, both at the state level and by virtue of his Adversary Proceeding; by incurring other damages, costs, and expenses to be established during discovery.

93. Plaintiff has incurred actual damages as the direct and proximate result of Kurdys' negligence in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT TWO – Willful or Wanton Conduct

94. Plaintiff repeats and re-alleges the allegations of paragraphs 9 through 93 of his Complaint as if set forth herein in their entirety.

95. Kurdys' conduct, as detailed above, was either willful on the part of Kurdys with intent to

damage his client Bader and was done wantonly, without regard to the likely and foreseeable damage to his client Bader, and such conduct gives rise to an award for punitive damages in the discretion of the jury.

## COUNT THREE – Fraudulent Concealment

96. Plaintiff repeats and re-alleges the allegations of paragraphs 9 through 95 of his Complaint as if set forth herein in their entirety.

97. Throughout the attorney-client relationship with Kurdys, Plaintiff relied, to his detriment, on Kurdys to provide timely, accurate, and truthful information regarding any and all developments in his case and relied, to his detriment, on Kurdys' silence in the face of repeated and explicit requests by Plaintiff for updates in the status and progress of his claims as an indication that there had been no significant developments in his case adverse to Plaintiff.

98. Upon information and belief, Kurdys' representation that the Bader judgment had been recorded when said judgment was never recorded; Kurdys' representation that a state action to set aside fraudulent conveyances had been filed when said action was never filed; Kurdys' representation that the Bankruptcy Trustee's action to set aside was sufficiently adequate to substitute for Plaintiff's Adversary Proceeding when it was not, were deliberate on Kurdys' part and done with the intent to conceal from Plaintiff and the Court the true facts, which demonstrated that Kurdys had been negligent, grossly negligent, and willfully and wantonly negligent in his representation of Plaintiff.

99. Kurdys' repeated, protracted, and fraudulent concealment of the true facts from Plaintiff greatly exacerbated Plaintiff's damages and such conduct gives rise to an award for punitive damages in the discretion of the jury.

WHEREFORE, Plaintiff Gregory Bader, through counsel, having asserted his verified Complaint against the Defendants Mark Kurdys and Roberts & Stevens P.A., respectfully prays for relief as follows:

1. That Plaintiff have and recover judgment against Defendants for actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest from the date of harm until satisfied;

2. That Plaintiff have and recover judgment against Defendants for punitive damages in an amount to be determined by the jury, up to the maximum amount allowed by law;

3. That Plaintiff have and recover against Defendants the cost of this action;

4. That the Court award Plaintiff such other and further relief as may be just and proper; and

5. That there be trial by jury on all factual issues.

Respectfully submitted, this the 3rd day of September, 2016.

        /s/Renorda Pryor        
RENORDA E. PRYOR
Attorney for Plaintiff
5400 Glenwood Avenue, Suite 218
Raleigh, North Carolina 27612
Tele: 919-533-5510
Fax: 919-578-8816
Email: rpryor@gorlaw.com
North Carolina Bar No. 36814

CERTIFICATE OF SERVICE

      I hereby certify that on the 4th day of September, 2016, I electronically filed the foregoing COMPLAINT AND REQUEST FOR TRIAL BY JURY with the Clerk of Court using the CM/ECF system, and will send notification of filing to the following via United States mail, certified return receipt:

Mark C. Kurdys
P.O. Box 7647
Asheville, NC 28802
Telephone: (828) 252-6600
Fax: (828) 253-7200
Email: mkurdys@roberts-stevens.com


Roberts & Stevens, P.A.
c/o Registered Agent Gregory D. Hutchins
301 College Street, Suite 400
Asheville, NC 28801

Respectfully submitted, this the 3rd day of September, 2016.

                                              /s/Renorda Pryor
                                              RENORDA E. PRYOR
                                              Attorney for Plaintiff
                                    5400 Glenwood Avenue, Suite 218
                                      Raleigh, North Carolina 27612
                                                  Tele: 919-533-5510
                                                  Fax:  919-578-8816
                                               Email: rpryor@gorlaw.com
                                        North Carolina Bar No. 36814