IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:16-CV-00294-GCM-DSC

| | |
|---|---|
| GREGORY BADER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  **ORDER** |
| | ) |
| ROBERTS & STEVENS, P.A. | ) |
| MARK KURDYS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER COMES** before this Court on Defendants' Mark Kurdys and Roberts & Stevens, P.A. (collectively, "Defendants") Motion for Summary Judgment as to the remaining claim for fraudulent concealment and for Defendants' counterclaim for breach of contract. Defendants submitted a memorandum in support of their Motion. Plaintiff Gregory Bader ("Bader") submitted a Response in Opposition to Defendants' Motion for Summary Judgment. Defendants submitted a reply to that response. Accordingly, this matter is ripe for disposition.

**I.  BACKGROUND**

The matter currently pending before this Court is Defendants' Motion for Summary Judgment on Bader's remaining claim for fraudulent concealment and Defendants' counterclaim for breach of contract. As such, the following facts are presented in the light most favorable to the non-moving party, Bader. This dispute arose out of the legal representation of Bader by Defendants. (Doc. No. 2, ¶12). Bader hired Defendants to pursue professional negligence and misrepresentation claims against Bader's former counsel, Creighton Sossomon ("Mr. Sossomon"). *Id.* at ¶9. Defendants filed suit against Mr. Sossomon on Bader's behalf on September 2, 2009. *Id.* at ¶15. The parties reached a settlement agreement in that suit. *Id* at ¶32.

1

However, Mr. Sossomon breached that settlement agreement. *Id.* at ¶35. Subsequently, Defendants sought and obtained a judgment against Mr. Sossomon in favor of Bader in the amount of $170,000 on September 8, 2010 ("Bader judgment"). *Id.* Mr. Sossomon appealed that judgment to the Fourth Circuit Court of Appeals. *Id.* at ¶44. The Fourth Circuit affirmed the judgment under a mandate issued on November 23, 2011. (Doc. No. 38-12). Defendants never recorded the judgment in Macon County, North Carolina even though Mr. Sossomon owned property there that Bader could have used to satisfy the judgment. (Doc. No. 2 ¶36).

From the beginning of the representation, Bader communicated to Defendants his concerns about collection on the judgment. *Id.* at ¶22. Defendants and Bader each searched for property owned by Mr. Sossomon that Bader could use to satisfy the judgment. *Id.* at ¶18,19. That search uncovered two properties located in Macon County, North Carolina ("Macon Properties"). *Id.* at ¶19. The Macon Properties are located on Pine Street and Center Drive, respectively. The relevant lien and ownership history on those properties is as follows:

- On December 12, 2005, Bank of America recorded a deed of trust against the Pine Street property, signed by Mr. and Mrs. Sossomon, which secured a note in the original amount of $460,000. (Doc. No 42-8).
- On April 24, 2009, Mr. Sossomon, who had owned the Macon Properties in his name alone, transferred the Center Drive property to himself and his wife, jointly, as evidenced by a deed recorded September 2, 2009; and on April 29, 2009, Mr. Sossomon transferred the Pine Street property to himself and his wife, jointly, as evidenced by a deed recorded December 3, 2009. (Doc. No. 2, ¶¶24, 26, 28).

- On January 25, 2011, as further security for a note, Bank of America recorded a deed of trust against the Center Drive property, signed by Mr. and Mrs. Sossomon. (Doc. No. 42-10).

In a communication from Defendants to Bader on March 10, 2010, Defendants indicated to Bader that Defendants believed the transfer of the Macon Properties to Mr. Sossomon and his wife as tenants by the entireties was a fraudulent transfer intended to shield Mr. Sossomon's assets from judgment. (Doc. No. 2, ¶30). Defendants and Bader began to discuss filing a motion to set aside the transfers as fraudulent. *Id.* at ¶31. On September 7, 2011, Bader submitted a check for the filing fee associated with the set aside action to Defendants. (Doc. No. 42-15). On August 17, 2012, Defendants sent Bader an email stating that "Sossomon's property is in Macon County, the same County where the action to set aside the fraudulent conveyance (of joint interest to Janet Sossomon and security interest to Bank of America) is pending." (Doc. No. 42-30). Defendants never actually filed a state court set aside action on Bader's behalf.

After the Fourth Circuit affirmed the Bader judgment, Defendants and Bader discussed the legal effect of that judgment. In an email on June 20, 2011, Bader told Defendants that he understood the Bader judgment to provide no lien or claim against any of Mr. Sossomon's properties. (Doc. No. 42-16). In an email sent by Defendants on July 22, 2011, Defendants explained that as an ordinary judgment creditor, Bader had no lien on Mr. Sossomon's properties. (Doc. No. 42-17).

On June 15, 2012, Mr. Sossomon filed a voluntary petition under Chapter 13 of the Bankruptcy Code. (Doc. 42-14). On October 9, 2012, Defendants filed a Notice of Claim in Mr. Sossomon's bankruptcy proceeding on behalf of Bader. (Doc. No 42-18). On October 10, 2012,

Defendants emailed a copy of that notice to Bader. *Id.* The notice left blank the spaces to list a "Secured Claim" and "Claim Entitled to Priority." *Id.*

On November 21, 2012, Bader sent Defendants an email that stated, "It sounds like my judgment is in the first position, BofA being second as I always believed - meaning I get paid first." (Doc. No. 42-19). Defendants responded on November 21, 2012 and stated, "To clarify, you are not in first position as far as Sossomon's creditors. [Bank of America] is because they had secured loans outstanding to Sossomon of approx. $500,000 before your judgment was entered, and secured creditors get paid before unsecured creditors in any bankruptcy." *Id.*

On April 30, 2013, Defendants sent Bader an email informing Bader that, "The secured creditor Bank of America is claiming first share up to $725K, then the State of NC is priority creditor for $29K then we are next creditor, unsecured, with a $270K claim." (Doc. No. 42-21). On December 18, 2014, Bader sent Defendants an email stating that, "My claim should be at the top of the line of creditors." (Doc. No. 42-24).

On May 8, 2013, Defendants filed an adversary proceeding against Mr. Sossomon, seeking to set aside the fraudulent conveyances of the Macon Properties. (Doc. No. 42-31). On May 26, 2013, Mr. Sossomon's bankruptcy trustee emailed Defendants a draft motion for sanctions stating that the motion would be filed if Defendants did not dismiss the adversary proceeding by the deadline. (Doc. No. 42-32). Defendants dismissed Bader's adversary proceeding on June 1, 2013. (Doc. No. 42-33). On June 5, 2013, Defendants emailed Bader stating, "Your fraudulent conveyance claims automatically became those of the Trustee and we had to dismiss our adversary proceeding…." (Doc. No 42-35). The first of the two Macon Properties was sold at a public sale. (Doc. No. 42-34). Mrs. Sossomon did not receive any of the proceeds of that sale. (Doc. No. 42).

4

On December 10, 2013, the bankruptcy trustee filed an adversary proceeding against Mr. Sossomon to set aside the transfer of the second Macon Property as being fraudulent. (Doc. No. 42-40). On February 18, 2015, United States Bankruptcy Judge George Hodges approved the settlement of the trustee's adversary proceeding, under which Mrs. Sossomon forfeited any right to proceeds from the sale of the Pine Street property. (Doc. No. 42-41). As such, Mrs. Sossomon received no proceeds from either sale of the Macon Properties.

On September 4, 2016, Bader filed an Amended Complaint before this Court alleging negligence, willful or wanton conduct, and fraudulent concealment against Defendants. (Doc. No. 2). This Court dismissed Bader's negligence and willful or wanton conduct claims by Order on September 1, 2017. (Doc. No. 26). Defendants filed the current Motion for Summary Judgment as to Bader's remaining fraudulent concealment claim and Defendants' breach of contract counterclaim on March 30, 2018. (Doc. No. 37).

## II. DISCUSSION

### a. Standard of Review

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a court reviews a motion for summary judgment, it draws inferences from the "underlying facts in the light most favorable to the nonmoving party." *Moore v. Winebrenner*, 927 F.2d 1312, 1313 (4th Cir. 1991).

The moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then

5

shifts to the opposing party to set out specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). A party opposing a motion for summary judgment cannot simply rely on their pleadings; rather, the non-moving party must tender evidence in the record that shows there is a genuine issue of material fact. Fed. R. Civ. P. 56(c).

### b. Motion for Summary Judgment on the Fraudulent Concealment Claim

Defendants have moved for summary judgment on Bader's remaining claim of fraudulent concealment. Bader alleged that four different events show that Defendants fraudulently concealed information from Bader that caused him damage. Each event is discussed below. For the reasons set forth below, the Motion for Summary Judgment as to the fraudulent concealment claim is **GRANTED**.

Under North Carolina law to prove fraudulent concealment, the plaintiff must show: "(1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive him; (3) that defendant intended to deceive him; (4) that plaintiff was deceived; and (5) that plaintiff suffered damage resulting from defendant's misrepresentation or concealment." *Claggett v. Wake Forest University*, 486 S.E.2d 443, 447 (N.C. Ct. App. 1997). Reliance on any alleged misrepresentations also must be reasonable in light of the circumstances. *Johnson v. Owens*, 140 S.E.2d 311, 314 (N.C. 1965). Reasonableness of a party's reliance is ordinarily a jury question unless the facts would allow a reasonable jury to make only one decision. *MacFadden v. Louf*, 643 S.E.2d 432, 434 (N.C. App. 2007).

#### i. Fraudulent concealment of Bader's creditor status

First, Bader alleges in the Amended Complaint that Defendants fraudulently misrepresented and concealed material information regarding Bader's creditor status.

Specifically, Bader alleges in the Amended Complaint that "[b]eginning sometime after the entry of the Bader judgment and continuing through August 2015, Kurdys represented to Plaintiff, both in conversation and email, that the Bader judgment secured him in a position superior to subsequent purchasers and/or lienholders." (Doc. No. 2, ¶68). Additionally, Bader alleged that "[i]n June 2015, when discussing the probable ten percent (10%) award from the Sossomon bankruptcy, Kurdys first expressed to Plaintiff that Plaintiff's claim was an unsecured, non-priority claim." *Id.* at ¶75.

In the Memorandum in Support of Defendants' Motion for Summary Judgment, Defendants attached several exhibits that show communication between Defendants and Bader. On June 20, 2011, Bader acknowledged in an email to Defendants that the Bader judgment offered no lien on Mr. Sossomon's properties. (Doc. No. 42-16). Additionally, Defendants sent Bader an email on July 22, 2011, that stated, "We have discussed these matters before. As an ordinary judgment creditor, you have no lien on Sossomon's property." (Doc. No. 42-17). Defendants also provided Bader with a copy of the Notice of Claim filed on Bader's behalf in Mr. Sossomon's bankruptcy proceeding. That Notice of Claim listed Bader's claim but left blank the sections for secured and priority claims. (Doc. No 42-18). Finally, on November 21, 2012, Defendants specifically told Bader via email that "[Y]ou are not in first position as far as Sossomon's creditors. [Bank of America] is because they had secured loans outstanding of approx. $500,000 before your judgment was entered and secured creditors get paid before unsecured creditors in any bankruptcy…." (Doc. No. 42-19). In an email dated April 30, 2013, Defendants explicitly stated to Bader that Bader's claim was "unsecured." (Doc. No 42-21). Each of these communications from Defendants happened more than two years before the date Bader alleged Defendants first informed him of his unsecured status.

7

This Court finds that Defendants met their initial burden under Federal Rule of Civil Procedure 56. The burden then shifts to Bader to show that a genuine issue of material fact exists to present to a jury in order to defeat the present Motion for Summary Judgment. Bader failed to meet that burden. Bader alleges that over email, Defendants represented to Bader that the Bader judgment "secured him in a position superior to subsequent purchasers and/or lienholders." However, Bader did not provide that email to this Court as an exhibit or provide an affidavit as to why that email is not available. As a matter of fact, the exhibits produced by Bader in opposition of the present Motion support Defendants' position. For example, Exhibit D attached to the Response in Opposition contains an email from Defendants to Bader that states that Bank of America has priority over Bader due to their status as a secured creditor. (Doc. No. 45-4). The email goes on to state, specifically, that Bader is an unsecured creditor. *Id.* Thus, Bader has failed to meet his burden of showing a genuine issue of material fact exists for trial on this issue.

### ii. Fraud based on the recording of the Bader judgment in Macon County

Bader also alleged in the Amended Complaint that Defendants concealed from Bader that the Bader judgment had not actually been recorded in Macon County. Specifically, Bader alleged "Kurdys' representation that the Bader Judgment had been recorded when said judgment was never recorded…were deliberate on Kurdys' part and done with the intent to conceal from Plaintiff and the Court the true facts...." (Doc. No. 2, ¶98). Additionally, Bader alleged that "[b]eginning sometime after the entry of the Bader judgment and continuing through August 2015, Kurdys willfully concealed from Plaintiff the fact that the Bader judgment had not been recorded." *Id.* at ¶70.

The memoranda submitted to this Court, however, show that there is no evidentiary support for those allegations. Even though almost all communication between the parties happened over email[1], Bader cannot provide a single email in which he asked Defendants to record the judgment. Likewise, no evidence in the record before this Court shows that Defendants ever stated the judgment was recorded.

Bader argues that the emails sent by Bader to Defendants dated September 6, 2012, September 17, 2012, and October 12, 2012 show the fraudulent concealment. In those emails, Bader expressed his belief that the judgment was recorded. Bader argues that Defendants concealed the fact that the judgment was not recorded by not correcting Bader's misstatement. These emails are not enough to sustain a cause of action for fraudulent concealment. Reliance on a representation in North Carolina must be reasonable to establish fraud. *Johnson*, 140 S.E.2d at 313. Here, the undisputed facts show that Bader's reliance was not reasonable. Bader never asked Defendants to record the judgment, and Defendants never stated to Bader that they did record the judgment. Bader attempts to hold Defendants liable for concealment based on Bader's own actions and not the actions of Defendants. This is the type of unreasonable reliance that is not recognized in North Carolina. Therefore, this Court finds that no reasonable jury could return a verdict in favor of Bader based on this allegation for fraudulent concealment.

Even if Bader's reliance was reasonable, Bader cannot show that any concealment on the part of Defendants caused Bader any damages. Bader's exhibits show that Bader began referring to the Bader judgment as recorded in September of 2012. Mr. Sossomon filed for bankruptcy in June of 2012. Thus, even if Defendants had immediately corrected Bader's misunderstanding, Bader had no options to improve his creditor status as Mr. Sossomon had already filed

---

[1] The parties generally communicated by email. On the rare occasion that the parties communicated verbally, a follow-up email documented their conversation. (Doc. No. 42-2).

9

bankruptcy. Thus, this Court finds that Bader failed to provide evidence to support the proposition that his reliance was reasonable or that any reliance proximately caused Bader any damage.

### iii. Fraud based on state action to set aside

Next, Bader alleged that Defendants fraudulently concealed the fact that Defendants never filed a state action to set aside. The undisputed facts show that Defendants sent an email to Bader stating that the state action to set aside was "pending." However, no state action to set aside was ever filed.

Defendants argue in their Motion for Summary Judgment that Bader cannot show that the "pending" statement proximately caused any of Bader's damages. In support of this, Defendants show that Bank of America obtained a lien on Mr. Sossomon's properties on December 12, 2005 and January 25, 2011. Bader did not submit the filing fee to Defendants to file the state action to set aside the fraudulent conveyance until September 7, 2011. The receipt of the filing fee happened over seven months after Bank of America obtained a lien on Mr. Sossomon's Macon Properties.

Bader argues that had Defendants informed Bader that the set aside action had not been filed, Bader could have protected his first priority interest. The timeline does not support this proposition. In order to have first priority over both properties, Bader would have needed to have a lien on the property prior to Bank of America. Bank of America obtained their liens in December of 2005 and January of 2011, respectively. Bader did not submit the filing fees until after Bank of America had both liens. Therefore, even if Defendants promptly filed the state action to set aside upon receipt of the filing fee, Bader would still have had a lower priority than Bank of America. Therefore, Bader cannot establish proximate cause on those facts.

Additionally, the purpose of a state action to set aside would be to prevent the dilution of proceeds creditors would receive upon a default. Here, a successful action to set aside the alleged fraudulent transaction would have prevented Mrs. Sossomon from receiving any of the proceeds of sale of the Macon Properties after Mr. Sossomon entered bankruptcy. During the sale of the two properties in question, Mrs. Sossomon did not receive any of the proceeds. Therefore, even though Defendants never filed the state action to set aside, Bader achieved the same result. Because the action to set aside would have had no effect on Bader's outcome, Bader cannot establish proximate cause based on these facts.

### iv. Fraudulent concealment based on Mr. Sossomon's bankruptcy

Bader also claims that Defendants fraudulently concealed facts surrounding Mr. Sossomon's bankruptcy proceeding. Specifically, Bader claims that Defendants fraudulently concealed the dismissal of Bader's individual claim in favor of the trustee's claim. Bader claims that Defendants were not required to dismiss his action in favor of the trustee. According to Bader, Defendants choice to dismiss the individual action during Mr. Sossomon's bankruptcy hurt Bader's interest in collection. Bader finally argues that Defendants' concealment of the fact that Defendants dismissed Bader's action prevented Bader from adequately protecting his interests.

In response, Defendants argued that Bader could not show proximate cause as to any damages claimed. Specifically, Defendants note that the original action filed on Bader's behalf during the bankruptcy sought to prevent Mrs. Sossomon from claiming any proceeds from the sale of the Macon Properties. The trustee's action created the same result.

Additionally, Bader claims that Defendants were not required to dismiss his individual suit in favor of the trustee. However, when asked in discovery to provide case law or statutory citation to support that statement, Bader responded with "the Bankruptcy Code and the Bankruptcy

11

Rules." In Bader's memorandum in opposition to summary judgment, again Bader fails to cite any legal authority to support that proposition. Bader cannot simply rely on his pleadings to create a genuine issue of material fact. Fed. R. Civ. P. 56(c). Rather, Bader must show the Court that there is an issue to try before the jury. Bader has failed to do that.

    **v. Summary judgment as to the fraudulent concealment claim**

Defendants have moved for summary judgment as to the fraudulent concealment claim. As discussed above, Bader alleged several different statements or inactions on the part of Defendants that Bader argues supports a claim for fraudulent concealment. The Court disagrees. It is not enough to simply allege facts at the summary judgment stage; rather, a party opposing a motion for summary judgment must support their factual allegation with evidence in the record. *Id.* Bader failed to meet this burden for each alleged concealment. As such, Defendants Motion for Summary Judgment as to the fraudulent concealment claim is **GRANTED**.

  **C. Summary Judgement as to the Breach of Contract Counterclaim**

The Court will hold a hearing in Charlotte, North Carolina as to Defendants' breach of contract counterclaim. The hearing will be scheduled by Notice in the near future.

**III.   CONCLUSION**

For the above stated reasons, Defendants' Motion for Summary Judgment is **GRANTED IN PART**. Defendants' Motion for Summary Judgment as to the fraudulent concealment claim is **GRANTED**. The Court will hold a hearing on the Motion for Summary Judgment as to Defendants' breach of contract counterclaim.

                    Signed: October 2, 2018

                      Graham C. Mullen
                      United States District Judge